<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **MARLON ANDERSON and APRIL CABBELL,**<br><br>       Plaintiffs,<br><br>    v.<br><br>**JUDGE NANCY SIVILLI,**<br><br>       Defendant. | **Civil Action No.: 14-6439 (ES)**<br><br>**OPINION** |

**SALAS, DISTRICT JUDGE**

**I.  INTRODUCTION**

Pending before this Court is Defendant Judge Nancy Sivilli's ("Defendant") motion to dismiss *pro se* Plaintiffs Marlon Anderson and April Cabbell's ("Plaintiffs") Amended Complaint. (D.E. No. 3 ("Am. Compl.")).  The Court decides Defendant's motion without oral argument pursuant to Federal Rule of Civil Procedure 78(b).  For the reasons discussed below, Defendant's motion is GRANTED and the Complaint is dismissed with prejudice.

**II.  BACKGROUND**

Plaintiffs filed suit *pro se* on October 15, 2014, against Defendant, who sits on the Superior Court of New Jersey.  (D.E. No. 1 ("Compl.")).  The Complaint claimed "breach of fiduciary duty and declaratory relief" in its caption, but the body of the document failed to concisely assert a specific cause of action.  On October 29, 2014, this Court *sua sponte* issued an order dismissing the Complaint for failure to comply with Rule 8(a) of the Federal Rules of Civil Procedure.  (D.E. No. 2 ("Order") at 1–2).  In particular, "[a]lthough Plaintiffs' Complaint contain[ed] fourteen pages of various statements and citations to law, neither the Court nor Defendant ha[d] any basis

on which to decipher what claims are actually being asserted." (*Id.* at 1). However, acknowledging Plaintiffs' *pro se* status, the Court permitted an amended complaint. (*Id.* at 2).

Plaintiffs amended their Complaint on December 11, 2014. (Am. Compl.). Though this amended version is more concise—four pages to the original's fourteen—it still presents only a vague factual accounting of the basis for the suit. The background seems to be that Plaintiffs agreed between themselves to a child support contract. (*Id.* at 3). After Plaintiff Cabbell "terminated the [c]ontract," Defendant "interfered with the [c]ontract" in some unspecified way. (*Id.*). Plaintiffs "brought in [an affidavit] challenging [Defendant's] jurisdiction," but "[s]he has not [r]ebutted the [affidavit] yet, [no]r show[n] the Plaintiffs how a controversy has been created." (*Id.*).

The Complaint alleges a variety of acts by Defendant, but Plaintiffs have not identified which of those acts they intend to plead as actionable claims. In fairness to Plaintiffs and in consideration of their *pro se* status, all potentially pertinent allegations are included here:

1. "Defendant breached her fiduciary duties to the Plaintiffs[] by failing to look out for the Plaintiffs because they are Americans living in North America under the State of New Jersey Constitution. [Defendant] ha[s] a [t]rustee and [f]iduciary duty to look out for the North American people. Plaintiff [Cabbell] asked the government to look out for her, the way they were suppose[d] to[,] and they didn't tell April that would create a [c]ommercial liability for both Plaintiffs." (*Id.*). Defendant "took advantage of the opportunity to make a profit for her personal gain. Plaintiffs were le[d] to believe that [Defendant] would follow the law so [Plaintiffs] trusted her to do so." (*Id.*).

2. Defendant "acted in [d]ishonor, because she had little or no knowledge of the Plaintiffs['] case." (*Id.*). She "disrespected them [by] telling them to be quiet." (*Id.*).

3. Defendant "totally ignored the Supreme Court [r]ulings" holding "that [c]hild [s]upport has been deemed [u]n[c]onstitutional." (*Id.*).

4. Plaintiff Cabbell "was detained for 1 hour at the Defendant's chambers by Sheriff['s] Officers and questioned and threaten[ed] to be arrested because [she] came to drop off paperwork for [Plaintiff Anderson]." (*Id.*).

5. Plaintiff Anderson "has been kidnapped by Sheriff['s] Officers and locked up for the Defendant['s] personal gain, although the Defendant stated on the record in her court that [c]hild [s]upport is a civil [matter] and [Plaintiff Anderson] cannot be arrested." (*Id.*).

6. Defendant "passed [Plaintiffs'] cases on to other courts for profit," with the result that "each court will be placing warrants (Bills of Attainders) out for [Plaintiff Anderson]." (*Id.*).

7. Plaintiff Anderson "was kidnapped on his job in front of customers, causing embarrassment [and] humili[ation] by Sheriff['s] Officers." (*Id.*). He "has to deal with mental anguish on a daily basis because of fear he will be kidnapped and held for ransom[] by these [p]rivate [entities] acting as though they are [p]ublic [o]fficials." (*Id.* at 4).

8. Plaintiffs "tried to get copies of the warrants and all court documents pertaining to them and the Sheriff['s] Officers Court Clerks, and Judges refuse to provide them with the paperwork." (*Id.*)

9. Plaintiff Cabbell sustained "mental anguish also because of the [i]ntimidation and the [r]etaliation she has endured with Sheriff['s] Officers, CPS, [and] Social Services." (*Id.*).

10. Plaintiffs "have been stripped of their rights and due process[.]" (*Id.*).

11. Defendant and others "have deprived [Plaintiffs] of their property, rights, and liberty to live by their private contract for child support between [Plaintiffs] without government intervention in their private . . . lives." (*Id.*).

Among Plaintiffs' injuries are that Plaintiff Anderson "has lost customers" and Plaintiff Cabbell "has loss of employment." (*Id.*). Further, Plaintiffs' "reputations ha[ve] been injured by all of this." (*Id.*). Their requested relief includes compensatory and exemplary damages, costs, and pre- and post-judgment interest. (*Id.*).

On June 10, 2015, Defendant moved to dismiss the Complaint. (D.E. No. 16). Her brief advanced four arguments: (1) the Complaint is barred by the Eleventh Amendment; (2) Defendant is not amenable to suit because she is not a "person" under the applicable statutory definition; (3) Defendant is protected from suit by absolute judicial immunity; and (4) the Complaint fails to set forth a cognizable cause of action. (D.E. No. 16-1 ("Def.'s Br.") at 6). Plaintiffs submitted a letter in opposition to the motion. (D.E. No. 18 ("Pls.' Br.")).

## III.   LEGAL STANDARD

### A.   Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(1)

A motion pursuant to Federal Rule of Civil Procedure 12(b)(1) asserts that the court does not have subject matter jurisdiction over the controversy at issue. "When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion." *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 191 n.4 (3d Cir. 2011). In considering a Rule 12(b)(1) motion, "the district court may not presume the truthfulness of plaintiff's allegations, but rather must evaluat[e] for itself the merits of [the] jurisdictional claims." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (internal citation and quotation marks omitted).

### B. Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to set forth "a short and plain statement of the claim showing that a pleader is entitled to relief." The pleading standard announced by Rule 8 does not require detailed factual allegations; it does, however, demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted). In addition, the plaintiff's short and plain statement of the claim must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation and internal quotation marks omitted).

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citation omitted).

In evaluating the sufficiency of a complaint, a court must accept all well-pleaded factual allegations contained in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Furthermore, "[when] deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached [thereto], matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2011).

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245; *see also Ray v. First Nat'l Bank of Omaha*, 413 F. App'x 427, 430 (3d Cir. 2011) ("A district court should not dismiss a *pro se* complaint without allowing the plaintiff an opportunity to amend his complaint unless an amendment would be inequitable or futile."). Furthermore, in ruling on the present motion, the Court "must construe [Plaintiffs'] complaint liberally as [they are] proceeding *pro se*." *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 32 (3d Cir. 2011) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

## IV.   DISCUSSION

### A.   Plaintiffs' Claims Against Defendant in Her Official Capacity Are Barred by the Eleventh Amendment

Defendant argues that "[t]he Amended Complaint should be dismissed because Plaintiffs' claims are barred by the Eleventh Amendment." (Def.'s Br. at 6). The Eleventh Amendment to the Federal Constitution provides that the federal courts do not have authority to decide cases wherein a state is a defendant. *See* U.S. Const. amend. XI. While New Jersey itself is not named in this suit, Eleventh Amendment immunity "encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities." *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997). "[W]hen the action is in essence one for the recovery of money from the state, the state is the *real, substantial party in interest* and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." *Id.* (emphasis added) (quoting *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464 (1945)).

The Third Circuit has articulated factors to determine whether the state is the real party in interest even though it is not a named defendant. *See Fitchik v. N.J. Transit Rail Operations, Inc.*,

6

873 F.2d 655, 659 (3d Cir. 1989).  The inquiry can be distilled into three points: (1) whether the money that would pay the judgment would come from the state; (2) the status of the defendant under state law; and (3) the defendant's degree of autonomy.  *Id*.  No one factor is assigned greater importance than another in the *Fitchik* analysis.  *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 549 (3d Cir. 2007); *Febres v. Camden Bd. of Educ.*, 445 F.3d 227, 229 (3d Cir. 2006) ("We now accord equal consideration to all three prongs of the analysis.").  If "the plaintiff seeks recovery from the personal assets of the individual," then "the state is not the real party in interest [and] the suit is therefore not barred by the Eleventh Amendment."  *Melo v. Hafer*, 912 F.2d 628, 635 (3d Cir. 1990), *aff'd*, 502 U.S. 21 (1991).

Defendant, as a state judge, is capable of acting in both an official and a personal capacity.  "[A] judgment against a public servant in his official capacity imposes liability on the entity that he represents," *Kentucky v. Graham*, 473 U.S. 159, 169 (1985), and therefore—under the "real party in interest" principle—is barred by the Eleventh Amendment.  In contrast, "[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law," and "an award of damages against an official in his personal capacity can be executed only against the official's personal assets."  *Id.* at 165–66.  To determine whether a suit names a defendant in her personal capacity or her official capacity, "we first look to the complaints and the 'course of proceedings.'"  *Melo*, 912 F.2d at 635.  For example, a complaint might "explicitly specif[y] that plaintiffs' . . . monetary claims against [a defendant] are asserted against the defendant in her personal capacity."  *Id.*  Or, it may implicitly "signif[y] a similar intent" by "only list[ing] [the individual defendant] and not the [state], . . . and only request[ing] damages from [the individual] and not from the state."  *Id.* at 636.  Another signal of a personal-capacity suit is a plaintiff's request for exemplary damages, which cannot be recovered from a

7

defendant in her official capacity. *See Gregory v. Chehi*, 843 F.2d 111, 119–20 (3d Cir. 1988) ("Punitive damages cannot be recovered from defendants in their official capacities. Thus, resolving doubts in favor of plaintiff, we will assume he is suing the individuals in their personal capacities as well.").

Plaintiffs here do not explicitly indicate whether their requested $1.25 million judgment is to be paid by Defendant personally or by the State of New Jersey. (*See* Am. Compl. at 4 (stating that "Plaintiff Prays for a Judgment against Defendant" but not specifying the expected source of the damages)). However, they do caption their Amended Complaint with only Judge Sivilli as defendant, (Am. Compl. at 1), and they do include exemplary damages among their requested relief, (Am. Compl. at 4). These details must resolve the ambiguity in favor of Plaintiffs, especially because they are proceeding *pro se*, and so the Amended Complaint survives an Eleventh Amendment challenge to the extent it would reach Defendant in her personal capacity.

Any claims that would target Defendant in her official capacity as a state judge are barred under the Eleventh Amendment.[1] "[T]he New Jersey Superior Court is an 'arm' of the state entitled to share in the state's sovereign immunity," and the "judicial branch is an integral part of the State of New Jersey." *Johnson v. State of New Jersey*, 869 F. Supp. 289, 296-97 (D.N.J. 1994). As further discussed herein, Plaintiffs' allegations stem from actions Defendant took while acting as a Superior Court Judge. Accordingly, the Court finds that Defendant, in her official capacity,

---

[1] Defendant's second argument, that she is not a "person" amenable to suit under 42 U.S.C. § 1983 or the New Jersey Civil Rights Act ("NJCRA"), is resolved in the same way as her first argument. Section 1983 "personhood" hinges upon whether the defendant is acting in an official or a personal capacity, and this inquiry matches the Eleventh Amendment inquiry. *See Melo*, 912 F.2d at 635 (noting in a § 1983 case that "[t]he lines marking the boundaries between official and personal capacity suits have been drawn primarily in the context of Eleventh Amendment cases."); *see also Silvero v. New Jersey*, No. 13–6599, 2014 WL 2937933, at *3 n.1 (D.N.J. June 30, 2014) ("State law claims brought under the [NJCRA] have been held to be analogous to [§ 1983] and any affirmative defenses and immunities available under § 1983 are likewise available under the NJCRA."). Therefore, any of Plaintiffs' claims that would rely upon § 1983 or the NJCRA would be barred to the same extent and for the same reasons they are barred under the Eleventh Amendment.

was acting as an arm of the state in respect of the allegations contained in Plaintiffs' Amended Complaint and, therefore, claims against Defendant in her official capacity must be dismissed with prejudice for lack of subject matter jurisdiction.

> **B. Plaintiffs' Claims Against Defendant in Her Personal Capacity Are Barred by Defendant's Judicial Immunity**

Although the Eleventh Amendment is not an available defense to personal-capacity claims against Defendant, *see Hafer v. Melo*, 502 U.S. at 31, "an official in a personal-capacity action may . . . be able to assert personal immunity defenses," *Graham*, 473 U.S. at 166-67 (citing, *inter alia*, *Pierson v. Ray*, 386 U.S. 547 (1967), which affirms absolute judicial immunity). Defendant argues that "[a]ll claims for damages against Judge Sivilli should be dismissed as Judge Sivilli is entitled to absolute judicial immunity from suit." (Def.'s Br. at 11). It is well established that "[a] judicial officer in the performance of his duties has absolute immunity from suit and will not be liable for his judicial acts." *Capogrosso v. Sup. Ct. of N.J.*, 588 F.3d 180, 184 (3d Cir. 2009) (quoting *Azubuko v. Royal*, 443 F.3d 302, 303 (3d Cir. 2006)). Immunity does not lapse merely because the judge made an error, exceeded her authority, or even acted in malice. *Capogrosso*, 588 F.3d at 184. The principle of judicial immunity preserves the integrity of the judicial function, permitting a judge to "be free to act upon his own convictions, without apprehension of personal consequences to himself." *Mireles v. Waco*, 502 U.S. 9, 10 (1991) (quoting *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 347 (1871)). It is overcome in only two scenarios: the judge acted either nonjudicially or in complete absence of all jurisdiction. *Id.* at 11–12 (citations omitted).

The first consideration—whether an act is judicial—depends on "the nature of the act itself, i.e., whether it is a function normally performed by a judge, and [on] the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." *Figueroa v. Blackburn*, 208 F.3d 435, 443 (3d Cir. 2000) (quoting *Stump v. Sparkman*, 435 U.S. 349, 362 (1978)). These guidelines

9

are difficult to apply here because Plaintiffs' allegations are so nebulous. However, even interpreting the allegations generously, the Amended Complaint does not describe conduct that was nonjudicial in nature. The basis of the parties' relationship from the beginning was a child support matter before Defendant in state court. (Am. Compl. at 3 ("How the Plaintiffs . . . came to enter a [f]iduciary relationship with the Defendant was based on the [c]hild [s]upport [c]ontract that was between the Plaintiffs.")). Adjudicating a legal dispute is the fundamental judicial function, and "the expectations of the parties" doubtless were that they were interacting as judge and litigants, not as private actors. Even if the relationship later deteriorated, it continued to exist only within the context of a court proceeding, and each of Defendant's alleged transgressions occurred within her role as a judge. Indeed, many of the alleged acts would be possible *only* within that role: Defendant "totally ignored . . . Supreme Court" precedent when ruling on the Plaintiffs' matter, (Am. Compl. at 3), ordered the detention or arrest of Plaintiffs, (*id.*), and "passed . . . cases on to other courts for profit," (*id.*). A private citizen without judicial power could accomplish none of these.

Likewise, Defendant did not act in complete absence of all jurisdiction. "The scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump*, 435 U.S. at 356. Generally, "where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes." *Figueroa*, 208 F.3d at 443–44. A judge might even act *in excess* of jurisdiction but still not in total *absence* of it—for example:

> If a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune.

10

*Stump*, 435 U.S. at 357 n.7.  There can be no dispute that Defendant, a Superior Court Judge, had the initial authority to hear Plaintiffs' child support matter; that she may have managed the case in a manner or toward a result that Plaintiffs found unsatisfactory does not alter her jurisdiction.

Even Plaintiffs' most damaging allegations would not overcome Defendant's judicial immunity.  For example, Defendant "took advantage of the opportunity to make a profit for her personal gain."  (Am. Compl. at 3).  She "passed [Plaintiffs'] cases on to other courts for profit."  (*Id.*).  She was associated with "[i]ntimidation and . . . [r]etaliation [by] Sheriff['s] Officers, CPS, [and] Social Services."  (*Id.*).  These claims, construed in the light most favorable to Plaintiffs, suggest that Defendant ordered, participated in, or benefitted from malicious and corrupt schemes.  But "[judicial] immunity applies even when the judge is accused of acting maliciously and corruptly."  *Pierson*, 386 U.S. at 554; *see also, e.g.*, *Gallas v. Sup. Ct. of Pa.*, 211 F.3d 760, 772 (3d Cir. 2000) (upholding judicial immunity over allegations that the defendant judge acted "for no judicial purpose and for the sole purpose of injuring the reputation of" the plaintiff, and that she "was motivated by a non-judicial intent to undermine [the plaintiff's] moral authority as Executive Administrator, and to assist political opponents of [the plaintiff] in terminating his employment").  The immunity doctrine "is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences."  *Id.* (internal citation and quotation marks omitted).  If the rule were otherwise—if alleged corruption were outside of a judge's immunity—then "the allegation of malicious or corrupt motives could always be made, and if the motives could be inquired into judges would be subjected to the same vexatious litigation upon such allegations, whether the motives had or had not any real existence."  *Bradley*, 80 U.S. (13 Wall.) at 354.  This would "distract[] officials from their governmental duties, inhibit[]

11

discretionary action, and deter[] able people from public service," *Harlow v. Fitzgerald*, 457 U.S. 800, 816 (1982), all destructive influences in a system that assumes and requires independent and fearless judges.

Private parties such as Plaintiffs here have a variety of remedies "[a]gainst the consequences of [judges'] erroneous or irregular action, from whatever motives proceeding, and to those remedies [private parties] must, in such cases, resort." *Bradley*, 80 U.S. (13 Wall.) at 354. For one, they may appeal a decision they believe is erroneous. But a judge "should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption." *Pierson*, 386 U.S. at 554. "[F]or malice or corruption in their action whilst exercising their judicial functions within the general scope of their jurisdiction, the judges of these courts can only be reached by public prosecution in the form of impeachment, or in such other form as may be specially prescribed." *Bradley*, 80 U.S. (13 Wall.) at 354. Put plainly: even naked corruption, which Plaintiffs seem to allege of Defendant here, will not render a judge liable to civil suit.

Therefore, because Plaintiffs' allegations flow entirely from actions that Defendant took in her judicial function while presiding over Plaintiffs' case—indeed, the only relationship between the parties was that one between a judge and litigants—Defendant was acting neither nonjudicially nor in the absence of jurisdiction. Accordingly, Defendant is entitled to absolute judicial immunity from Plaintiff's personal-capacity claims and those claims must be dismissed with prejudice.

### C. Plaintiffs' Complaint Fails to State a Claim Under Federal Rule of Civil Procedure 12(b)(6)

Even absent the grounds outlined above, Plaintiffs' Amended Complaint must be dismissed. As Defendant finally argues that "the Complaint must be dismissed for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6)." (Def.'s Br. at 13). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions." *Twombly*, 550 U.S. at 555 (internal citations and quotation marks omitted). Plaintiffs' allegations here barely amount to even "labels and conclusions." The Amended Complaint is a disorganized string of baseless legal pronouncements ("[c]hild [s]upport has been deemed [u]n[c]onstitutional," (Am. Compl. at 3)) and legal jargon ("[Defendant] ha[s] a Trustee and Fiduciary duty to look out for the North American people," (*id.*)). It asserts brash accusations absent any contextual support; for example, Defendant allegedly "passed these cases on to other courts for profit," (Am. Compl. at 3), but Plaintiffs do not identify what "these cases" are, do not specify which "other courts" have accepted them, and do not describe—in even the most general terms—how Defendant has "profit[ed]" from the practice. Defendant allegedly "locked up [Plaintiff Anderson] for [Defendant's] personal gain," (*id.*), but there is no further description of this detention and no further explanation of this "personal gain" theory.

Granted, a complaint need not meticulously specify the particulars of a theory, but rather need set forth only "a short and plain statement of the claim showing that a pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Further, the Court "must construe [Plaintiffs'] complaint liberally as [they are] proceeding *pro se*." *Huertas*, 641 F.3d at 32. But this pleading standard demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (2009). Even after the Court dismissed Plaintiffs' initial Complaint and advised them of how to improve it, they have supplied very little factual matter to show that they are entitled to relief or to put Defendant on notice of what exactly she is alleged to have done. The Complaint therefore is inadequate under Rule 8 and is dismissed under Rule 12(b)(6).

## V.    CONCLUSION

For the reasons stated above, the Court concludes that Plaintiffs' claims are barred by Defendant's Eleventh Amendment protection and judicial immunity. Moreover, Plaintiffs'

Amended Complaint fails to state a claim. "A district court should not dismiss a *pro se* complaint without allowing the plaintiff an opportunity to amend his complaint unless an amendment would be inequitable or futile." *Ray*, 413 F. App'x at 430. Here, the Court has previously permitted Plaintiffs to amend their original Complaint, and the Court finds that permitting amendment of the Amended Complaint would be futile because no set of facts concerning Defendant's actions as a Superior Court Judge presiding over Plaintiffs' case would enable Plaintiffs to avoid the immunity bars set forth above. Accordingly, the Court dismisses Plaintiffs' Complaint with prejudice.

    An appropriate order accompanies this opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**
